**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **DAVID H. BESSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 18-cv-02527 (APM)** |
| ) | |
| **UNITED STATES DEPARTMENT** ) | |
| **OF COMMERCE,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM OPINION AND ORDER**

### I.    INTRODUCTION

In May 2018, Plaintiff David H. Besson filed a Freedom of Information Act ("FOIA") request with Defendant U.S. Department of Commerce, seeking records of a Cooperative Research and Development Agreement ("CRADA") between the National Institute of Standards and Technology, a subsidiary of Defendant, and Ligado Networks, a private telecommunications company.  In response to Plaintiff's FOIA request, Defendant produced the CRADA with several portions redacted.  Citing FOIA Exemption 4, Defendant withheld the names of Ligado employees, the Statement of Work, and parts of the Collaborator Information section of the CRADA. Defendant also now asserts that the names of Ligado employees were properly withheld based on Exemption 6.

Now before the court are the parties' cross-motions for summary judgment.  After considering the full record and the parties' legal arguments, the court finds that Defendant appropriately invoked Exemption 4 to withhold the funding and technical equipment contributions Ligado made to the project, but not as to the names of Ligado employees.  Defendant also

improperly withheld the employees names under Exemption 6.  Additionally, there remains a genuine dispute of material fact as to the public availability of portions of the CRADA's Statement of Work.  Thus, the court grants the parties' motions in part and denies them in part.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff filed a request for information under FOIA in May 2018, seeking "a copy of the Cooperative Research and Development Agreement between [the National Institute of Standards and Technology "NIST"] and Ligado Networks."  Compl., ECF No. 1 [hereinafter Compl.], Ex. 1, ECF No. 1-1, at 1.  A CRADA is a mechanism through which government laboratories cooperate with the private sector on research and development projects.  *See* Def.'s Renewed Mot. for Summ. J., ECF No. 28 [hereinafter Def.'s Renewed Mot.], Decl. of Catherine S. Fletcher, ECF No. 28-2 [hereinafter Fletcher Decl.], ¶ 4.  Ligado entered into an agreement with NIST on or around July 8, 2016, to work on a project called "Measuring Impacts of Adjacent B and LTE Signals of GPS." *See id.* ¶ 18.  In June 2018, NIST produced the CRADA with certain information redacted.  *See id.* ¶ 11.  Specifically, NIST withheld the names of Ligado Networks employees under Exemption 4.  *See id.* ¶ 17.  NIST also invoked Exemption 4 to withhold the CRADA's Statement of Work section, and portions of the Collaborator Information section detailing the financial and technical support Ligado gave to NIST as part of the project.  *See id.* ¶ 11.  Plaintiff appealed NIST's withholdings, which the agency rejected. *See id.* ¶ 14.

### B.   Procedural Background

Plaintiff, proceeding pro se, filed this action on October 22, 2018, *see* Compl., and amended his complaint two weeks later, *see* Am. Compl., ECF No. 4.  Plaintiff challenges all

redactions to the CRADA, arguing that he "has a right of access to the entirety of the requested information . . . , and there is no legal basis for defendant's denial of such access." *See id.* ¶ 9.

Both parties then moved for summary judgment. *See* Def.'s Mot. For Summ. J., ECF No. 14; Pl.'s Cross-Mot. For Summ. J., ECF No. 17. After briefing closed, the Supreme Court decided *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), which clarified the standard for confidentiality under Exemption 4. The Court held that information is "confidential" for purposes of Exemption 4, at least where it is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Id.* at 2366. This court then denied the parties' original motions for summary judgment to afford them the opportunity to reassert their arguments in light of *Food Marketing Institute*. *See* Order, ECF No. 26 [hereinafter Order]. The court also encouraged Defendant to re-evaluate its withholding of Ligado employee names, observing that courts in this jurisdiction ordinarily have not found employee names to be "confidential" for purposes of Exemption 4. *Id.* at 2.

In November 2019, Defendant filed a Renewed Motion for Summary Judgment. *See generally* Def.'s Renewed Mot. Defendant argues that its withholdings under Exemption 4, including employee names, are consistent with the holding in *Food Marketing Institute*, and that its redaction of Ligado employee names is also valid under an exemption not previously cited, Exemption 6. Shortly thereafter, Plaintiff filed a Cross-Motion for Summary Judgment. *See* Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Renewed Mot., ECF No. 32 [hereinafter Pl.'s Renewed Mot.]. Plaintiff objects to Defendant's argument that all redacted information is confidential by introducing evidence that he claims demonstrates some of the withheld information is public information. Plaintiff also asserts a public interest in knowing the names of the Ligado employees. These motions are now ripe for consideration.

III.   **LEGAL STANDARD**

Most FOIA cases are appropriately resolved on motions for summary judgment.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

An agency bears the burden of showing that it properly withheld materials pursuant to a statutory exemption.  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).  An agency "may carry its burden . . . by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption."  *Brennan Ctr. for Justice v. Dep't of State*, 296 F. Supp. 3d 73, 80 (D.D.C. 2017).  "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence . . . of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

4

**IV.    DISCUSSION**

The parties' renewed cross-motions for summary judgment present two issues: (1) whether Defendant properly withheld the names of Ligado Networks employees, the Statement of Work section, and other collaborator information in the CRADA pursuant to Exemption 4; and (2) whether Defendant properly withheld the names of Ligado employees pursuant to Exemption 6.

**A.    Exemption 4**

The court first considers the parties' dispute concerning Defendant's withholding of information pursuant to Exemption 4.  Exemption 4 permits an agency to withhold "trade secrets and commercial or financial information," which are "obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Thus, there are three requirements for information to qualify for non-disclosure under Exemption 4: (1) it must be either trade secrets, commercial information, or financial information; (2) it must be obtained from a person; and (3) it must be either privileged or confidential.  Here, there is no dispute that the withheld information was "obtained from a person," and that it is not a trade secret or privileged.  Thus, the two questions before the court are: (1) whether the information is commercial or financial; and (2), if so, whether it is confidential.

*1.    Whether the withheld information is "commercial or financial"*

The terms "financial" and "commercial" as used in FOIA "are to be given their ordinary meanings."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quoting *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (internal quotations marks omitted)).  This means that "information is commercial under this exemption if, in and of itself, it serves a commercial function or is of a commercial nature."  *Id.* (internal quotation marks and citation omitted).  Moreover, "the plain language of Exemption 4

covers all financial information, despite the apparent commercial focus of the Exemption." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 266 (D.C. Cir. 1982).

a)        *Names of Ligado employees*

Defendant redacted the identities of all Ligado employees found in the CRADA, claiming their names qualify as "commercial" information. This included the names of Ligado's principal investigator and five project team members. *See* Fletcher. Decl. ¶ 25. Defendant additionally withheld the name of the Ligado representative that signed the CRADA, though Ligado now states that it "does not object to the release" of that information. Fletcher Decl., Ex. 7, Decl. of Valerie Green, ECF No. 28-2, PDF pp. 47–49 [hereinafter Ligado Decl.], ¶ 7.

As the court stated in its previous order denying summary judgment, "[c]ourts in this jurisdiction typically have not recognized a person's identity as the type of 'commercial information' protected by Exemption 4." Order at 2 (citing *Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971) (holding that "a bare list of names and addresses of employees which employers are required by law to give the Board, without any express promise of confidentiality, and which cannot be fairly characterized as 'trade secrets' or 'financial' or 'commercial' information is not exempted from disclosure by" Exemption 4); *Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 105–06 (D.D.C. 2013) (rejecting as "commercial" under Exemption 4 a person's name, title, and responsibilities); *Comptel v. FCC*, 910 F. Supp. 2d 100, 116 (D.D.C. 2012) ("The [agency] has not met its burden to show that names and contact information should be exempt as confidential commercial or financial information.")). Thus, an agency seeking to withhold employee names by invoking Exemption 4 must identify specific evidence demonstrating something unique about the names that logically or plausibly renders them commercial in nature or function. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) ("Ultimately, an

agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).  Defendant, in this case, has not met this burden.

Catherine Fletcher, the FOIA officer for NIST, states "the identities of Ligado's principal investigator for the project, as well as the five other employees . . . can be considered commercial information" because such information, if disclosed, "could provide competitors with an understanding of Ligado's technical capabilities, among other things, and reveal how the team's collective expertise fits into the design and development of Ligado's LTE evolving network and related services."  Fletcher Decl. ¶ 25.  Ligado articulates similar concerns in its declaration, contending that disclosure "would allow competitors and others to learn about the technical expertise of Ligado's team and that team's role on this project.  This could provide third parties with insight into Ligado's business strategy and technological positioning" and "could help third parties in any attempt to recruit Ligado's technical team."  Ligado Decl. ¶ 10.  Thus, Defendant and Ligado appear to be arguing that the names are commercial in function because Ligado has a "commercial interest at stake" in their disclosure.  *See Nat'l Ass'n of Home Builders*, 309 F.3d at 39.

A company may have a commercial stake in requested information when its disclosure would cause commercial consequences.  *See Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 320 (D.C. Cir. 2006) (finding letters to be commercial because they "describe favorable market conditions for domestic companies, and their disclosure would help rivals to identify and exploit those companies' competitive weaknesses"); *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 830 F.2d 278, 281 (D.C. Cir. 1987) (holding that a non-profit's reports describing the operations of its members' nuclear power plants were commercial because

the "commercial fortunes" of member utilities "could be materially affected by the disclosure of health and safety problems experienced during the operation of nuclear power facilities"); *Pub. Citizen*, 975 F. Supp. 2d at 101 ("'[C]ommerical' is generally defined to mean 'engaged in commerce' or 'having reference to, or bearing on commerce.'"); *Forest Cty. Potawatomi Cmty. v. Zinke*, 278 F. Supp. 3d 181, 199–200 (D.D.C. 2017) (reviewing circuit precedent).

But it is not clear what commercial consequences *Ligado* risks from disclosure of its employees' names. Ligado says that disclosure would reveal information about this particular team, but it does not adequately explain how this information, if revealed, would "provide third parties with insight into Ligado's business strategy" or its technical capabilities. Ligado Decl. ¶ 10. Ligado has not, for instance, asserted that any of its team members possess such unique knowledge or abilities that the mere disclosure of their names would itself reveal Ligado's business strategy or capabilities. Nor is Ligado's concern over "poaching" employees sufficient to establish its commercial nature. *See id.* Ligado has not, for example, shown that it keeps its employees' identities secret or that their names are not otherwise publicly available. How disclosure would create insight into Ligado's business strategy or capabilities or any unique risk of poaching remains unexplained. Defendant thus has failed to establish that the names of Ligado employees appearing in the CRADA qualify as "commercial" information for purposes of Exemption 4.

<em>b)     Other Withheld Information</em>

All other information withheld under Exemption 4 qualifies as commercial or financial information. Plaintiff does not contend otherwise. The Statement of Work section of the CRADA "includes descriptions of Ligado's LTE network technology and Ligado's commercial application of this technology," and a description of the work to be performed during the project. Fletcher Decl. ¶ 24. Similarly, the redacted parts of the Collaborator Information and Collaborator's

Funding Contribution sections include "the listing of the specialized technical equipment Ligado provided," as well as "Ligado's monetary contribution." *Id.* According to Fletcher, "[i]f a competitor had knowledge of the specific equipment provided or Ligado's monetary contribution, it could gain an understanding of how, among other things, Ligado has designed its LTE network to prevent GPS disruption and related costs." *Id.* This information easily fits the meaning of "commercial" and "financial" information protected under Exemption 4.

2.   *Whether the withheld information is confidential*

Next, the court considers whether the commercial and financial information in the CRADA is confidential. The Supreme Court recently clarified the meaning of "confidential" information as it relates to Exemption 4 in *Food Marketing Institute*, holding that "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential.'" 139 S. Ct. at 2366.[1] This decision overrules the D.C. Circuit decision in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (1974), and eliminates the "substantial harm to the competitive position" standard that this Circuit had applied in assessing Exemption 4 claims for information involuntarily turned over to the government, *id.* at 770.

In this case, Defendant satisfies the *Food Marketing Institute* standard for confidentiality, at least, with respect to its withholdings from the Collaborator Contribution and Collaborator's Funding Contribution sections. The withheld information in those sections "is both customarily and actually treated as private" by Ligado. *See* 139 S. Ct. at 2366. It "describes monetary and non-monetary contributions" made to the project by Ligado and "reflects sensitive commercial and

---

[1] The Supreme Court ultimately did not decide whether an "assurance of privacy" is necessary to establish confidentiality. *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 112 (D.D.C. 2019). The court nevertheless considers whether such assurance was provided in this case.

financial data of Ligado," which the company "does not publicly disclose" and "has kept this category of information private."  Ligado Decl. ¶ 9.  Fletcher confirms that Ligado has kept the information in question "closely held."  Fletcher Decl. ¶ 21.

The court reaches a different conclusion, however, as to the Statement of Work section. According to Ligado's declarant, the Statement of Work

> reflects specific activity performed by Ligado in furtherance of developing its business.  *While certain limited aspects of the Statement of Work may be available in public documents, the full Statement of Work is not available and has been maintained as private by Ligado.*  It would reveal commercially-sensitive information about Ligado's business plans and activities if that information was released.

Ligado Decl. ¶ 8 (emphasis added).  The italicized sentence suggests that some portion of the Statement of Work is contained "in public documents."  That information therefore is arguably *not* "actually [ ] treated as private," as required by *Food Marketing Institute*.  The agency bears the burden of establishing a FOIA exemption's applicability, and by injecting into the record the possibility that some portion of the Statement of Work is public, the agency fails to carry that burden here where it seeks to withhold the Statement of Work in its entirety.  Now, it may be that even the public portion of the Statement of Work cannot be revealed without placing at risk the non-public portion.  *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (noting that an agency need not disclose "non-exempt portions of a document" that "are inextricably intertwined with exempt portions").  But neither Defendant nor Ligado have made a representation to that effect.  Accordingly, the court will deny Defendant's motion for summary judgment with respect to the Statement of Work, but afford the agency the opportunity to show that the entirety of the Statement of Work is subject to Exemption 4 protection, even though some of that Statement may be public.

As to the remaining portions of the CRADA that Ligado has in fact kept closely held, context shows that the information was supplied under an implied assurance of confidentiality. *See Food Mktg. Inst.*, 139 S. Ct. at 2363 (citing favorably the Ninth Circuit's formulation that "Exemption 4 would 'protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise' of confidentiality" (quoting *GSA v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969)); *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993). As Fletcher explains, "NIST understands that Ligado, like other private sector CRADA partners, seeks to protect information concerning their commercial products and services." Fletcher Decl. ¶ 27. Ligado's declarant confirms that, as a private company, "it is particularly important to Ligado that its commercial and financial information be maintained as confidential," Ligado Decl. ¶ 6, and that the company provided this information "to NIST with an implied assurance of confidentiality," *id.* ¶ 5.

Plaintiff contends that disclosure of the entire CRADA is nevertheless warranted because, he believes, parts of the document are now in the public domain. In other words, Plaintiff invokes the "public domain" exception, which provides that "[i]f identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999). Under this exception, the burden is squarely placed on the plaintiff, "for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). In order to prevail, the requesting party "has the burden of showing that there is a permanent public record of the exact portions" they seek to obtain. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). Moreover, the public domain exception cuts to the heart of an agency's Exemption 4 claim, for "[t]o the extent that any data

requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality — a sine qua non of Exemption 4." *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987).

Plaintiff makes a public domain exception claim as to two portions of the CRADA: the Statement of Work and the list of equipment contributed by Ligado to the project, which presumably is in the Collaborator's Contributions section. Because the court already has held the agency has failed to meet its burden with respect to the Statement of Work, it need not reach Plaintiff's public domain argument as to that section. The court, however, must consider the public domain exception as to the equipment contributed by Ligado.

Plaintiff points to NIST Technical Note 1952, titled "LTE Impacts on GPS," which he contends contains a list of equipment used during the subject project. *See* Pl.'s Renewed Mot. at 4, 7. Plaintiff, however, offers no evidence showing that the equipment listed in the Technical Note is identical to the list of equipment in the CRADA. To the contrary, Fletcher says that "[n]either Ligado nor NIST have disclosed the . . . specific technical equipment Ligado contributed." Fletcher Decl. ¶ 21. Plaintiff's speculation that the CRADA's listing of equipment is identical to the one contained in the Technical Note does not create a genuine dispute of material fact as to the public availability of the equipment listed in the CRADA.

\*     \*     \*

In summary, Defendant has failed to establish that Ligado employee names are exempt from disclosure under Exemption 4. The agency has shown that the remaining portions of the CRADA were properly withheld pursuant to Exemption 4, except for the Statement of Work, a portion of which may be public. The court will afford the agency an opportunity to establish either

that (1) no portion of the Statement of Work is public, or (2) the public portion of the statement cannot be disclosed without risk of revealing the nonpublic portion.

### B.    Exemption 6

As a fall back to its Exemption 4 withholding of Ligado employee names, Defendant relies on Exemption 6.  *See* Fletcher Decl. ¶¶ 30–33.   Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C § 552(b)(6); *see Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).  "'Similar files' include 'detailed Government records on an individual which can be identified as applying to that individual.'" *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146–47 (D.C. Cir. 2015) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)).  In assessing an Exemption 6 withholding, the court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999).  Before it reaches the balancing test, however, the court must first decide the threshold question of "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News*, 787 F.3d at 1147 (internal quotation marks omitted).  "If no significant privacy interest is implicated, FOIA demands disclosure." *Multi Ag Media, LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (cleaned up).  The government may satisfy its burden of showing a substantial invasion of privacy by affidavits containing "reasonable specificity of detail rather than merely conclusory statements." *Prison Legal News*, 787 F.3d at 1147.

On the present record, the court cannot accept Defendant's withholding of Ligado employee names under Exemption 6.   Forty years ago, the D.C. Circuit explained that

"Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships.  Surely it was not intended to shield matters of such clear public concern as the names of those entering into contracts with the federal government." *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980).  The court recently affirmed that view, emphasizing that FOIA's privacy exemptions are those of an "intimate personal nature," *Doe, 1 v. Fed. Election Comm'n*, 920 F.3d 866, 873 (D.C. Cir. 2019) (quoting *Sims*, 642 F.2d at 574), and that "[i]nformation relating to business judgments and relationships does not qualify for exemption," *id.*[2]  To be sure, the D.C. Circuit has not categorically excluded from coverage privacy interests simply because they arise from or involve a person's business or professional capacity.  *See King & Spalding, LLP v. U.S. Dep't of Health & Human Servs.*, 395 F. Supp. 3d 116, 121 (D.D.C. 2019) (observing based on a survey of the case law that "a person's 'personal privacy' interest is not strictly cabined to information connected to her personal capacity").  But in those cases where the Circuit has found a substantial privacy interest, the potential disclosure of business or professional information could have resulted in an "unwarranted" invasion of personal privacy, such as placing an individual's safety at risk or exposing the person to harassment or serious reputational harm. *See id.* at 121–22.

In this case, Defendant has not established even a *de minimis* personal privacy interest in the names of Ligado employees appearing in the CRADA.  Ligado itself disclaims any substantial personal privacy interest in the name of the person who signed the CRADA on Ligado's behalf. *See* Ligado Decl. ¶ 7.  As for the employees staffed on the project, Defendant offers only the conclusory assertion that the disclosure of their names could subject them to "unwanted and unnecessary personal contact and harassment from third parties."  Fletcher Decl. ¶ 32.  But

---

[2] *Doe, 1* concerned the personal privacy interest under Exemption 7(C), but that interest is the same under Exemption 6.  *See King & Spalding, LLP v. U.S. Dep't of Health & Human Servs.*, 395 F. Supp. 3d 116, 123 (D.D.C. 2019).

Defendant offers no reason to believe that disclosure likely will lead to such an "unwarranted" invasion of privacy. *See Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 142–43 (D.D.C. 2014) (rejecting Exemption 6 protection for names of agency employees who signed an internal memorandum endorsing a contract; "[W]hile Defendant does suggest that the signatories might be subject to 'annoyance or harassment' or become the target of 'harassing inquiries' if their names are released, it says absolutely nothing more about *who* would engage in such harassment and *why* this outcome is likely."); *White Coat Waste Project v. U.S. Dep't of Veterans Affairs*, 404 F. Supp. 3d 87, 107 (D.D.C. 2019) (following approach taken in *Judicial Watch* with respect to employees' names but allowing agency to supplement the record); *cf. Nat'l Ass'n of Home Builders*, 309 F.3d at 37 (rejecting Exemption 6's application, in part, where the agency "has established only the speculative potential of a privacy invasion without any degree of likelihood"). There is nothing particularly controversial, political, or newsworthy about the CRADA or its subject matter, or the fact of being employed with Ligado—at least nothing brought to the court's attention.[3]  Defendant thus has failed to demonstrate that disclosure of Ligado employee names would compromise a substantial privacy interest, and so Exemption 6 does not apply at the threshold. The court therefore need not balance the public interest.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendant's Renewed Motion for Summary Judgment, and grants in part and denies in part Plaintiff's Renewed Cross-Motion for Summary Judgment, as follows:

---

[3] Had this been Defendant's first motion for summary judgment, the court might have afforded Defendant an opportunity to supplement the record. But this is Defendant's renewed motion, and Defendant did not even assert Exemption 6 on the first go around. *See generally* Def.'s Mem. Supporting Def.'s Cross-Mot. & Opp'n to Pl.'s Mot. for Summ. J., ECF No. 16-3. The court therefore declines to allow Defendant a third bite of the apple.

1. Defendant shall produce a copy of the CRADA that identifies the names of Ligado's signatory, its Principal Investigator, and the Collaborator's Project Team;

2. Defendant properly withheld all other portions of the CRADA pursuant to Exemption 4, except the Statement of Work, as to which there remains a genuine dispute of material fact; and,

3. As to the Statement of Work, Defendant shall either (a) disclose that portion of the section that is public; or (b) renew its motion for summary judgment by September 4, 2020, by supplying evidence that (i) no portion of the Statement of Work is public, or (ii) that the public portion cannot be disclosed without risking disclosure of the nonpublic portion.


Dated:  August 5, 2020

Amit P. Mehta
United States District Court Judge

16